## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCRANTON QUINCY HOSPITAL COMPANY, LLC, d/b/a Moses Taylor Hospital, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX M. AZAR II, Secretary, U.S. Department of Health and Human Services, <br><br> Defendant. | Civil Action No. 18-2310 (ABJ) <br> (Consolidated 19-cv-1602) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs in this case are two hospitals, Scranton Quincy Hospital Company, LLC (d/b/a Moses Taylor Hospital) and Tomball Texas Hospital Company (d/b/a Tomball Regional Center), and they have sued the Secretary of the U.S. Department of Health and Human Services Alex M. Azar II.[1]   Plaintiffs are challenging the Secretary's calculation of certain adjustments made to payments they receive under the Medicare program.   The disputed adjustments, which Medicare

---

1      On May 31, 2019, these plaintiffs filed the operative complaint at issue in this ruling.  *See Scranton Quincy Hosp. Co., LLC v. Azar*, 19-cv-1602 (RC) [Dkt. # 1] ("Compl.").   On September 5, 2019, defendant filed an unopposed motion to consolidate that case, along with two others – *Lee Memorial Health System v. Azar*, 18-cv-2374 (TJK), and *McLeod Loris/Seacoast Hospital v. Azar*, 19-cv-1603 (DLF) – with an earlier-filed case pending before this Court, *Affinity Hospital, LLC v. Azar*, 18-cv-2310 (ABJ) ("*Affinity Hosp.*").  *See Affinity Hosp.*, Def.'s Unopposed Mot. to Consolidate [Dkt. # 12].   The four cases involved common legal issues and the same defendant.  *Id.*   On September 16, 2019, the Court granted the consolidation motion.   *Affinity Hosp.*, Minute Order (Sept. 16, 2019).   On December 10, 2019, plaintiffs voluntarily dismissed *Affinity Hospital, Lee Memorial Health System,* and *McLeod Loris/Seacoast Hospital*, leaving only the *Scranton Quincy Hospital Company* matter pending before the Court.  *See Affinity Hosp.*, Notice of Dismissal [Dkt. # 18].

provides to hospitals that serve a disproportionate share of low-income patients, are designed to provide additional payments for uncompensated care.

Plaintiffs took issue with the manner in which defendant calculated their uncompensated care adjustment ("UCC adjustment") for fiscal year 2015, and they asserted that the Secretary used the wrong data in estimating the amount of uncompensated care they provided during the relevant period. They appealed the calculations and resulting DSH payments to the agency's Provider Reimbursement Review Board ("Board" or "PRRB"), *id.*, and the Board dismissed the appeals on the ground that the statute divests it of jurisdiction to take up the issue.

Plaintiffs then filed this lawsuit challenging the Board's dismissal of their appeals. Count I alleges that the Board's application of the provision precluding administrative and judicial review was contrary to the plain meaning of the statute. Count II alleges that the dismissal of the appeals violated the Constitution.

The Secretary moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that the statute precludes any review – administrative or judicial – of the disputed UCC adjustment. In response to an order from the Court seeking clarification, though, the parties agreed that the Court does have jurisdiction to review the PRRB's decision that *it* did not have jurisdiction to review plaintiffs' administrative appeals. With the parties' consent, then, the Court will deem defendant's Rule 12(b)(6) to be a motion for summary judgment on the first count of the complaint. Further, the Court will *sua sponte* deem defendant's motion on the second count to be a motion for failure to state a claim under Rule 12(b)(6).

For the following reasons, the Court finds that the PRRB correctly determined that it lacked jurisdiction under the statute, and it will grant defendant's motion for summary judgment on Count I. It will also grant the motion to dismiss plaintiffs' constitutional challenge for failure to

state a claim as to Count II.  This opinion does not address, and it should not be read to endorse or express any view about, the fairness or reasonableness of the calculations at issue.

## STATUTORY FRAMEWORK

The federal Medicare program, established by Title XVIII of the Social Security Act, provides health insurance to the elderly and disabled.  *See Amgen, Inc. v. Smith,* 357 F.3d 103, 105 (D.C. Cir. 2004).  The program is divided into five parts, Parts A through E.  *See Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011), citing 42 U.S.C. §§ 1395c–1395i–5.  Part A provides payments to hospitals for services provided to Medicare beneficiaries, 42 U.S.C. § 1395c *et seq.*, including inpatient services, which are subject to numerous adjustments to account for such things as a hospital's geographic location and the population it serves.  *See id.* § 1395ww(d).

Relevant here, Medicare provides an adjustment, known as the Disproportionate Share Hospital ("DSH") payment, for hospitals that serve a significantly disproportionate number of low-income patients.  *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs*., 830 F.3d 515, 517 (D.C. Cir. 2016), citing 42 U.S.C. § 1395ww(d)(5)(F).  In 2010, Congress enacted the Patient Protection and Affordable Care Act ("the Affordable Care Act"), Pub. L. No. 111–148, which revised the DSH payment in an effort to account for the costs of uncompensated care that hospitals provide to patients who have no means to pay, whether through federal programs or otherwise. *Id.*; s*ee* Medicare Program Final Rule, 78 Fed. Reg. 50,496 ("Final Rule") at 50,622, 50,634–35 (Aug. 19, 2013).

The amended DSH adjustment, which took effect fiscal year ("FY") 2014, is calculated using a combination of the old DSH payment and the new payment for uncompensated care.  *See* 42 U.S.C. § 1395ww(r).  Paragraph (1) of the statute describes the first part of the adjustment, which is based on the old DSH payment and provides twenty-five percent of the old payment to

hospitals.  42 U.S.C. § 1395ww(r)(1).  Referred to as the "[e]mpirically justified" DSH payment, *id.*, it is calculated in part by determining the number of overnight stays a hospital has for patients (a) who receive Medicaid benefits and (b) patients who receive both Medicare and supplemental security income ("SSI") benefits, as reported on hospitals' annual cost reports submitted to Medicare.  *Id.* §§ 1395ww(d)(5)(F)(vi)(I)–(II), 1395ww(r)(1).  The Court will refer to this number as "Medicaid and SSI patient days," for ease of reference.

Paragraph (2) of the statute establishes the second part of the adjustment, the UCC adjustment.  It provides an "[a]dditional payment" for uncompensated care, which represents each hospital's share of "75 percent of what otherwise would have been paid as Medicare DSH payments . . . after the amount is reduced for changes in the percentage of individuals that are uninsured."  Final Rule, 78 Fed. Reg. at 50,505.  It is determined by multiplying three factors:  (1) an estimate of the remaining seventy-five percent of the DSH payments nationwide, (2) an estimate of the decline in the national uninsured rate for the fiscal year as compared to the prior fiscal year, and (3) each qualifying hospital's share of the total amount of uncompensated care.  42 U.S.C. §§ 1395ww(d)(5)(F)(i), 1395ww(r)(2).  Plaintiffs challenge how the Secretary calculated "Factor three" of their UCC adjustments.  *Id.* § 1395ww(r)(2)(C).

Paragraph (3) of the statute contains the following review preclusion provision:  "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . [a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)" or "[a]ny period selected by the Secretary for such purposes."  42 U.S.C. § 1395ww(r)(3).

A provider may appeal a payment determination under the Medicare Act to the PRRB pursuant to section 1395oo(a).  42 U.S.C. § 1395oo(a).

## REGULATORY FRAMEWORK

When calculating the UCC adjustment for FY 2014, the Secretary looked to the old DSH payment calculation as a means to determine the amount of a hospital's uncompensated care: he used a hospital's number of Medicaid and SSI patient days obtained from its 2010/2011 cost reports, Final Rule, 78 Fed. Reg. at 50,642, finding that this data served as "a reasonable proxy for utilization by uninsured patients." *Id.* at 50,636; Compl. ¶¶ 18, 21.[2]

The Secretary did the same for the following fiscal year, FY 2015, using a hospital's number of Medicaid and SSI patient days from 2012 cost reports "unless that cost report [wa]s unavailable or reflect[ed] less than a full 12-month year."  Compl. ¶ 22, quoting 79 Fed. Reg. 49,854, 50,018 (Aug. 22, 2014).  If a hospital's 2012 cost report was for a period shorter than twelve months, the agency would "use the cost report from 2012 or 2011 that is closest to being a full 12-month cost report." *Id.*  In his rule governing FY 2015 payments, the Secretary explained that for the prior FY 2014, he "used data from the most recently available full year cost report for the Medicaid days and the most recently available SSI ratios, which meant data from the 2010/2011 cost reports (that is, cost reports that have cost reporting periods that begin in either FY 2010 or FY 2011)."  79 Fed. Reg. at 50,018.

## FACTUAL BACKGROUND

Plaintiffs are two hospitals that participate in the federal Medicare program.  Compl. ¶ 3. They seek to challenge how the Secretary determined the amount of uncompensated care that would be used in calculating Factor three of their FY 2015 DSH adjustments.  Compl. ¶ 3, *see* 42 U.S.C. § 1395ww(r)(2)(C).

---

2       The Secretary explained that it would use this number for FY 2014 and potentially subsequent years until better data sources become available through new Medicare cost worksheets.  *See* Final Rule, 78 Fed. Reg. at 50,636.

The two plaintiffs each changed ownership during FY 2012, which resulted in each having two cost reports that began in FY 2012.  Compl. ¶ 40.  Moses Taylor Hospital had a cost report for the six-month period from July 1, 2011 to December 31, 2011 and another for the twelve-month period from July 1, 2012 to June 30, 2013.  *Id.* ¶ 40(a).  Tomball Regional Center had a cost report for the nine-month period from October 1, 2011 to June 30, 2012 and another for the twelve-month period from July 1, 2012 to June 30, 2013.  *Id.* ¶ 40(b).

The Secretary used each hospital's cost report for the shorter period, rather than the report covering twelve months, in calculating the FY 2015 UCC adjustment.  *Id.*  It is this choice that plaintiffs challenge.

## PROCEDURAL HISTORY

On January 30, 2015, plaintiffs filed separate administrative appeals of the agency's selection of the cost report data in determining their UCC adjustments.  *See* Jurisdictional Decision for Moses Taylor Hosp., PRRB Case 15-1297, and Jurisdictional Decision for Tomball Reg'l Ctr., PRRB Case 15-1296, Ex. 1 to Compl. [Dkt. # 1-1].  On April 1, 2019, the PRRB dismissed the appeals for lack of jurisdiction pursuant to 42 U.S.C. § 1395ww(r)(3).  *See id.* at 6, 12.

On May 31, 2019, plaintiffs filed this lawsuit.  Compl.  Their complaint contains two claims brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).  *Id.* ¶¶ 36, 47.  Count I alleges that the Board's application of the preclusion provision in the DSH statute was contrary to the plain meaning of the statute.  *Id* ¶ 38.  Count II alleges that the PRRB's denial of jurisdiction "raises serious constitutional concerns."  *Id*. ¶ 48; *see id.* ¶ 47.  Plaintiffs ask the Court to order defendant to reverse the jurisdictional decision of the PRRB and to "instruct[] the Secretary to recalculate Plaintiffs' 2015 UCC payments by using Plaintiffs' full 12-month cost reporting periods starting in [federal ]FY 2012, consistent with the Secretary's own policies."  *Id.* ¶ 2.

On December 20, 2019, defendant filed a motion to dismiss for lack of subject matter jurisdiction.  Def.'s Mot. to Dismiss [Dkt. # 19] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. to Dismiss [Dkt. # 19-1] ("Def.'s Mem.").  While the two counts in the complaint challenge the PRRB's dismissal of plaintiffs' administrative appeals, defendant characterized the "two counts [as] seeking to challenge the Secretary's decision to estimate Plaintiffs' uncompensated care based on different cost reports," and it contended that the calculation was not subject to review.  Def.'s Mem. at 9–10.  Plaintiffs opposed the motion on February 21, 2020, Pls.' Mem. in Opp. to Def.'s Mot. [Dkt. # 21] ("Pls.' Opp."), and defendant replied on April 3, 2020.  Def.'s Reply Mem. in Supp. of Mot. to Dismiss [Dkt. # 23] ("Def.'s Reply").  On April 20, 2020, the Court granted plaintiffs leave to file a surreply.  Minute Order (Apr. 20, 2020); *see* Pls.' Surreply to Def.'s Reply [Dkt. # 26] ("Pls.' Surreply").

While the complaint focused on whether the Board properly decided that it lacked jurisdiction to consider plaintiffs' administrative appeals, defendant sought dismissal under Rule 12(b)(1) on the ground that the Court lacked subject matter jurisdiction over the calculation.  Def.'s Mot. at 1.  The Court asked the parties for their views on whether it had jurisdiction to review the Board's decision that *the Board* did not have jurisdiction over plaintiffs' administrative appeal, and if so, whether the Court should consider defendant's motion to dismiss as a Rule 56 motion for summary judgment.  Minute Order (Oct. 30, 2020).  Both parties agreed that the Court has jurisdiction to review the PRRB's jurisdictional decision and that the Court could treat defendant's motion on that issue, in the alternative, as a motion for summary judgement under Rule 56.  *See* Pls.' Resp. to Oct. 30, 2020 Minute Order [Dkt. # 28]; Def.'s Resp. to Oct. 30, 2020 Minute Order [Dkt. # 29] at 2 n.1, citing *James Madison Ltd. by Hecht v. Ludwig*, 868 F. Supp. 3, 5 n.1 (D.D.C. 1994); *Tookes v. United States*, 811 F. Supp. 2d 322, 328 (D.D.C. 2011); and

*Loughlin v. United States*, 230 F. Supp. 2d 26, 36–37 (D.D.C. 2002). The Court will follow that approach with respect to Count I of the complaint.

Also, the Court will treat defendant's motion to dismiss Count II as a motion to dismiss for failure to state a claim under Rule 12(b)(6) as opposed to a jurisdictional motion under Rule 12(b)(1). Courts in this circuit have construed Rule 12(b)(1) motions under Rule 12(b)(6) where appropriate. *See Kim v. United States*, 618 F. Supp. 2d 31, 38, n.7 (D.D.C. 2009), *aff'd in part, rev'd in part and remanded*, 632 F.3d 713 (D.C. Cir. 2011) (noting it to be fully consistent with plaintiffs' rights and an efficient use of judicial resources for a district court to *sua sponte* dismiss a complaint for failure to state a claim where it is clear that "the claimant cannot possibly win relief"), quoting *Baker v. Dir., United States Parole Comm'n,* 916 F.2d 725 (D.C. Cir. 1990). Upon consideration of plaintiffs' allegations as to Count II, the Court finds it appropriate to consider defendant's motion under Rule 12(b)(6) rather than Rule 12(b)(1).

## STANDARD OF REVIEW

### I.    Motion to Dismiss

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule

12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

### A.      Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.      Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning*, 292 F.3d at 242. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

II.      **Summary Judgment**

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the Administrative Procedure Act, Rule 56 does not apply due to the limited role of a court in reviewing the administrative record.  *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D).  However, the scope of review is narrow.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The agency's decision is presumed to be valid, *see Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971), and the court must not "substitute its judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made."  *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations omitted) (internal quotation marks omitted).

## ANALYSIS

Plaintiffs are challenging the Secretary's refusal to exercise jurisdiction over the administrative appeals of their FY 2015 UCC adjustments.  Compl. ¶ 1; Pls.' Opp. at 1–2 (asserting that their appeal of the matter was subject to administrative review before the Board and that this action challenging the Board's decision is subject to judicial review).  In Count I, plaintiffs claim that the statutory preclusion provision did not require the Board to decline to review the calculation

they maintain was arbitrary and capricious because the Secretary's decision was *ultra vires* and contrary to his own policies.  Compl. ¶¶ 35–45.  In Count II, plaintiffs argue – without much specificity – that the PRRB's dismissal of their appeal raises constitutional issues.  *Id.* ¶ 48.  They ask the Court to order defendant to "recalculate Plaintiffs' 2015 UCC payments by using Plaintiffs' full 12-month cost reporting periods starting in [federal ]FY 2012."[3]  Compl. ¶ 2.

Defendant moved to dismiss for lack of subject matter jurisdiction, asserting the DSH statute precludes any review of plaintiffs' claims.  Def.'s Mem. at 2, 10–11 (arguing that the plain language of 42 U.S.C. § 1395ww(r)(3), the statute's overall purpose, and the applicable case law bar judicial review of the claims).  As explained above, the Court will deem defendant's motion to be a motion for summary judgment as to Count I, and a motion to dismiss Count II for failure to state a claim.

## I.      The Board Correctly Concluded that the Statute Precludes Administrative and Judicial Review.

There is a "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986), and the APA provides for a "basic presumption of judicial review" of administrative actions.  *See Tex. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012), quoting *Banzhaf v. Smith*, 737 F.2d 1167, 1169 (D.C. Cir. 1984) (en banc); *see* 5 U.S.C. § 701(a)(1).  But Congress may preclude judicial review of an administrative action by statute.  *Tex. All.*, 681 F.3d at 408, citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) (holding that the presumption in favor of judicial review can be overcome by specific language in the statute that is a "reliable indicator" of

---

3       The relief sought by plaintiffs would raise the question of the Court's authority to review the merits of the UCC calculation under the statute, but because the Court is only reviewing the narrow issue of the Board's decision on its own jurisdiction and will uphold its dismissal of plaintiffs' appeals, the Court's jurisdiction to review that issue under Rule 56 is not in question.

Congress's intent to preclude review).  To determine "[w]hether and to what extent a particular statute precludes judicial review," courts consider its "express language, . . . the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Block*, 467 U.S. at 345.

### A.    The Express Language of the Statute Precludes Administrative and Judicial Review.

The section of the Medicare statute at issue in this case governs payments for inpatient hospital services.  *See* 42 U.S.C. § 1395ww(a), (r).  Subsection (r) of that section contains three paragraphs.    Paragraph (1) establishes the "[e]mpirically justified DSH payments," paragraph (2) establishes the "[a]dditional payment" for uncompensated care, and paragraph (3) limits administrative and judicial review of specific aspects of the Secretary's calculation of those payments.  42 U.S.C. § 1395ww(r)(1)–(3).

> (r) Adjustments to medicare DSH payments
>
>> (1) Empirically justified DSH payments . . .
>>
>> (2) Additional payment . . .
>>
>>> (A) Factor one . . .
>>>
>>> (B) Factor two . . .
>>>
>>> (C) Factor three . . .
>>>
>>>> A factor equal to the percent, for each subsection (d) hospital, that represents the quotient of--
>>>>
>>>> (i) the amount of uncompensated care for such hospital for a period selected by the Secretary (as *estimated* by the Secretary, based on appropriate data (including, in the case where the Secretary determines that alternative *data* is available which is a better proxy for the costs of subsection (d) hospitals for treating the uninsured, the use of such alternative data)); and
>>>>
>>>> (ii) the aggregate amount of uncompensated care for all subsection (d) hospitals that receive a payment under this subsection for such *period* (as so *estimated*, based on such *data*).

(3) Limitations on review

There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title,[4] or otherwise of the following:

(A) Any estimate of the Secretary for purposes of determining the factors described in paragraph (2).

(B) Any period selected by the Secretary for such purposes.

42 U.S.C. § 1395ww(r) (emphasis added).

Here, plaintiffs challenge the Secretary's application of Factor three. "Because the Plaintiffs changed ownership during FY 2012, each had two cost reporting periods that began during that period," one covering a period of fewer than twelve months and another covering a twelve-month period. Compl. ¶ 40. The Secretary used data from each hospital's cost reports covering the shorter periods to determine the number of Medicaid and SSI patient days for each hospital in estimating their amount of uncompensated care under paragraph (2)(C)(i). Plaintiffs take issue with this selection of data given the Secretary's statements about which cost reports the agency would use for FY 2015 adjustments and what it used for FY 2014 adjustments. *See* 79 Fed. Reg. at 49,854, 50,018.

Plaintiffs acknowledge that the statute "precludes review of the 'estimates of the Secretary' and 'periods selected by the Secretary,'" but they insist that they "are not challenging the 'estimates' or 'periods' adopted by the Secretary; instead they are appealing an *error* in the Secretary's *application* of those 'estimates' or 'periods.'" Pls.' Opp. at 2 (emphasis in original). This argument dances on the head of pin that will not support its weight.

---

4       Section 1395ff of the statute governs appeals by individuals to the PRRB, and section 1395oo governs appeals by Medicare providers to the PRRB. 42 U.S.C. §§ 1395ff, 1395oo.

The D.C. Circuit has held that "the [Affordable Care] Act bars judicial review of the Secretary's estimate of the hospital's amount of uncompensated care." *Fla. Health*, 830 F.3d at 519 (internal quotation marks omitted). The Court of Appeals explained that when applying the preclusion provision in paragraph (3):

> [t]he dispositive issue is whether the challenged [action is] inextricably intertwined with an action that all agree *is* shielded from review, regardless of where that action lies in the agency's decision tree.

*Id.* at 521 (emphasis in original).

*Florida Health* involved a challenge by a hospital to the cost reports the Secretary used to determine a different number in calculating its UCC adjustment for FY 2014: the number of Medicaid patients the hospital served. 830 F.3d at 517, 522. The Secretary had decided that the agency would use 2010/2011 cost reports, as updated in March 2013,[5] since that was "the most recently available" data. *Id.*, citing Final Rule, 78 Fed. Reg. at 50,638; *id.* at 517–18, citing Final Rule, 78 Fed. Reg. at 50,647 (declining to use later data "because there would not be enough time to ensure its accuracy with an audit"). The hospital sued, challenging the Secretary's refusal to use the hospital's updated April 2013 data. *Id.* at 518. The court dismissed the lawsuit for lack of subject matter jurisdiction under 42 U.S.C. § 1395ww(r)(3), and the D.C. Circuit affirmed. *Id.*

The Court of Appeals held that the statute's "specific language" provided a "reliable indicator" that Congress intended to bar review of the issue in the case, and that the plaintiffs could not circumvent the bar on judicial review by recasting their claim as a challenge to the "underlying data on which the Secretary relied." 830 F.3d at 518–19. The Court found that the selection of the underlying data was "indispensable" and "integral" to, and "inextricably intertwined" with, the Secretary's estimate of the hospital's amount of uncompensated care. *Id.* at 519 ("No other data

---

5       Hospitals may amend their annual cost reports if they find that the initial figures they submitted were inaccurate. *Fla. Health*, 830 F.3d at 517.

factored into the Secretary's estimate of uncompensated care," and "the data are the entire basis for the estimate."). Therefore, allowing the hospital to challenge the selection of data under that circumstance would "eviscerate the bar on judicial review." *Id.*

The D.C. Circuit reached the same conclusion in *DCH Regional Medical Center v. Azar*, a case involving Factor three of the UCC adjustment. 925 F.3d 503 (D.C. Cir. 2019). There, a hospital challenged the Secretary's determination that when two hospitals merged, he would use the data filed under the surviving hospital's Centers for Medicare & Medicaid Services ("CMS") certification number to calculate Factor three. *Id.* at 505. The plaintiff, which had merged with another hospital, received payment based on its share of uncompensated care but not that of the other facility. *Id.* It took the position that it was not challenging an estimate of the Secretary, but only "the methodology adopted and employed" to calculate Factor three. *Id.* The D.C. Circuit rejected this argument, holding that the methodology used to generate "estimates is 'inextricably intertwined' with the estimates themselves." *Id.* at 507, quoting *Fla. Health*, 830 F.3d at 521 (explaining that the Court in *Florida Health* rejected the argument made in that case that "an 'estimate' is not the same thing as 'data' on which it is based"); *see also N. Oaks Med. Ctr. v. Azar*, Civil Action No. 18-9088, 2020 WL 1502185, at *2, *4–*6 (E.D. La. Mar. 25, 2020) (relying on *Florida Health* and *DCH Regional* in ruling that paragraph (3) precludes judicial review of the Secretary's calculation of Factor three based on the six-month cost report data reported under the surviving CMS certification number after a corporate restructuring).

Plaintiffs submit that this case is distinguishable from both *Florida Health* and *DCH Regional* because those cases "*specifically attacked the methodology* and policies adopted by the Secretary," while here, plaintiffs are "simply trying to enforce those policies." Pls.' Opp. at 2–3 (emphasis in original). But a review of the complaint makes it clear that these plaintiffs are doing

exactly what the plaintiffs in *Florida Health* and *DCH Regional* did:  complaining about the method that was used, and the particular data the Secretary chose to rely upon, when estimating the amount of uncompensated care.  *See* Compl. ¶ 41 (the agency "did not use the Plaintiffs' full 12-month period cost report that began in FY 2012" but instead "arbitrarily selected a cost reporting period with *less* than 12-months of data when a full 12-month cost report was available within FY 2012") (emphasis in original); and ¶ 42 ("comparing hospitals with less than 12 months of data to a national average comprised of hospitals with 12 months of data in the Factor 3 calculation is irrational on its face").  Indeed, plaintiffs specifically ask the Court to direct the agency to calculate the UCC payments again, using the data they believe is appropriate.  *See id.* ¶ 2.  As plaintiffs' own complaint reveals, the selection of one cost report for FY 2012 over another, *id.* ¶ 40, is "inextricably intertwined" with the Secretary's estimate in Factor three.  *DCH Reg'l,* 925 F.3d at 507, quoting *Fla. Health*, 830 F.3d at 521.  As in *Florida Health,* "[n]o other data factored into the Secretary's estimate of [plaintiffs'] uncompensated care," 830 F.3d at 519, and as in that case, this is the type of "estimate" that is not subject to review.  *Id.* at 520.

Moreover, challenging the decision to use data from a FY 2012 cost report covering a period shorter than twelve months involves challenging a "period selected by the Secretary" used in calculating Factor three.  Factor three requires defendant to estimate the amount of a hospital's uncompensated care based on appropriate data determined by the Secretary "for a period selected by the Secretary."  42 U.S.C. § 1395ww(r)(2)(C)(i).  Plaintiffs challenge the use of the Moses Taylor Hospital cost report covering six months instead of twelve, and Tomball Regional Center's report covering nine months instead of twelve.  *See* Compl. ¶ 40.  Thus, plaintiffs are seeking review of "[a]ny period selected by the Secretary" for the purpose of calculating Factor three, which is also precluded from administrative and judicial review.  42 U.S.C. § 1395ww(r)(3)(B).

For these reasons, the plain language of section 1395ww(r)(3) precludes administrative and judicial review of plaintiffs' claims.

### B.   The Structure of the Statute Supports the Conclusion that Congress Precluded the Board's Review of Plaintiffs' Claims.

While the text is clear, the "structure of the statutory scheme" also supports the conclusion that plaintiffs' claims are barred from administrative or judicial review.  *See Block*, 467 U.S. at 345.  The statute's preclusion provision appears in the subsection that governs DSH payments and specifically cross-references the paragraph that governs the UCC adjustment.  *See* 42 U.S.C. § 1395ww(r)(3) (referring to the estimates and periods in paragraph (2) of the subsection); *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1067 (D.C. Cir. 2018) (finding that the disputed adjustment was inextricably intertwined with the prospective payment rates, which were not subject to administrative or judicial review, because internal cross-references "tie[d] together the prospective payment rate and the statutory adjustments"); *compare Am. Clinical Lab'y v. Azar*, 931 F.3d 1195, 1205–08 (D.C. Cir. 2019) (finding that the data collection provision was not covered by the preclusion provision, in part, because "Congress set out the process for data collection in a separate and distinct subsection and with its own set of rules").

### C.   Plaintiffs' Allegations that the Secretary Departed from His Own Policy and/or Acted *Ultra Vires* Do Not Alter the Result.

Count I posits that the "statutory preclusion of review provision does not apply to the Plaintiffs' claims that the Secretary failed to comply with his own policy; nor does it apply to the Plaintiffs' claims that the Secretary acted *ultra vires*."  Compl. ¶ 39; *see also id.* ¶ 43 (even if the preclusion provision "protect[s] the substance of the Secretary's UCC calculations from review, it

does not excuse the Secretary from acting outside the bounds of his authority; that is, the Secretary may not act *ultra vires*").[6]

Plaintiffs argue that even if "the statute precludes challenges to the 'estimates and periods' established by the Secretary . . . it does not follow that the statute precludes review of a challenge to his arbitrary and detrimental *departure* from those estimates and periods." Pls.' Surreply at 5 (emphasis in original); *see also* Pls.' Opp. at 10–13 (arguing that the Secretary's failure to follow his own policy on which cost report to use in calculating their UCC adjustments violated the statute's requirement to use "appropriate data"). But plaintiffs are simply trying to plead their way around the jurisdictional requirement; saying that the Secretary wrongly departed from his own policies when he chose the data for the estimate or selected the period involved is fundamentally indistinguishable from a claim that he chose the wrong data or selected the wrong period.

The repetition of the mantra "*ultra vires*" does not help either. It is true that claims of *ultra vires* acts may be subject to judicial review in "narrow" circumstances "where Congress is understood generally to have precluded review." *Griffith v. Fed. Labor Rels. Auth.*, 842 F.2d 487, 492 (D.C. Cir. 1988) ("[T]he Court found district court review proper, despite an express finality provision, where the National Labor Relations Board had acted 'in excess of its delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act.'") (second alternation in original), citing *Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 480–81 (1964).

---

6   The Court notes that the complaint suffers from an overabundance of legal arguments and case citations that need not be included in the "short and plain statement of the claim showing that the pleader is entitled to relief" called for by Federal Rule of Civil Procedure 8. Fed. R. Civ. P. 8(a)(2). Plaintiffs' penchant for advocacy made it difficult to discern the precise nature of their claims, and this material would have been better saved for the briefing of dispositive motions.

But the scope of the *Kyne* exception is "very limited."  *U.S. Dep't of Justice v. Fed. Labor Rels. Auth.*, 981 F.2d 1339, 1342 (D.C. Cir. 1993); *Griffith*, 842 F.2d at 493 (the *Kyne* exception has an "extremely limited scope"); *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984) ("extraordinarily narrow").  The exception applies when three requirements are met: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l*, 925 F.3d at 509–10 (citation omitted) (finding that "DCH fail[ed] to satisfy the first or third of [the *Kyne* exception] requirements").

The Court finds that plaintiffs cannot establish the first and third requirements of the *Kyne* test.  First, they claim that the Secretary did not follow his policy and used the wrong period when calculating their UCC adjustment.  Pls.' Opp. at 11; *see also id.* at 7 (arguing that he should have selected the period announced in his rulemaking, "namely, the '2012 cost report[ing period]'").  But as explained above, the statute *expressly* precludes review of "[a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)" and "[a]ny period selected by the Secretary for" that purpose.  42 U.S.C. § 1395ww(r)(3).  Therefore, plaintiffs cannot meet the first requirement of the *Kyne* test.

Moreover, plaintiffs cannot establish the third *Kyne* requirement.  Generally, to challenge an agency action as *ultra vires*, a plaintiff "must show a 'patent violation of agency authority.'" *Am. Clinical Lab'y Ass'n*, 931 F.3d at 1208, quoting *Indep. Cosm. Mfrs. & Distribs., Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 574 F.2d 553, 555 (D.C. Cir. 1978); *see Fla. Health*, 830 F.3d at 522 (stating that "[a] violation is 'patent' if it is '[o]bvious' or 'apparent'").  But in a situation where the statute precludes judicial review, *Kyne* requires a showing of  "extreme agency error,

not merely garden-variety errors of law or fact." *DCH Reg'l*, 925 F.3d at 509 (alternation omitted) (internal quotation marks omitted).  Here, the agency calculated plaintiffs' UCC payments by estimating the amount of each plaintiff's uncompensated care using alternative data from a period that defendant selected, as authorized by paragraph (2)(C)(i).  This was not "in excess of its delegated powers." *Id.*

And the argument that the Secretary departed from "the period he announced in rulemaking," Pls.' Opp. at 7, does not satisfy the third requirement.  The third prong of the *Kyne* exception applies only to an "obvious violation of a clear *statutory* command," *DCH Reg'l*, 925 F.3d at 509 (emphasis added), not the violation of the agency's self-prescribed rules.  *See, e.g., Am. Fed'n of Gov't Emps. v. Fed. Labor Rels. Auth.*, Civ. Action No. 19-142 (JEB), 2019 WL 3532942, at *5 (D.D.C. 2019) (the *Kyne* exception does not apply even if an agency violates its own regulation); *Seafarers Int'l Union of N. Am., Atl., Gulf, Lakes & Inland Waters Dist., AFL-CIO v. NLRB*, No. 83-0748, 1983 WL 2118, at *1 (D.D.C. Oct. 21, 1983) (an allegation that an agency departed from its own policies and precedents "does not fit within the limited *Leedom v. Kyne* exception requiring a violation of a statutory mandate").

For all of these reasons, the Court holds that that the Board correctly determined under 42 U.S.C. § 1395ww(r)(3) that it lacked jurisdiction to consider plaintiffs' administrative appeals. Therefore, judgment will be entered in favor of defendant on Count I.

## II.     The Board's Dismissal of Plaintiffs' Appeal Does Not Offend the Constitution.

Count II alleges that "[t]he Secretary's action through the PRRB's denial of jurisdiction . . . raises serious constitutional concerns" under separation-of-powers principles, Compl. ¶ 48, but

plaintiffs abandoned that claim in their briefing,[7] and they took up the mantle that preclusion would violate the Due Process Clause.  *See* Pls.' Opp. at 13 (header:  "Preclusion Deprives Hospitals of Due Process Protection Under the Fifth Amendment.") (capitalizations omitted).   Defendant argues that plaintiffs' constitutional claim, under either theory, should be dismissed either because the Court lacks subject matter jurisdiction to consider a "non-colorable" constitutional claim, or because plaintiffs failed to state a claim that would survive Rule 12(b)(6).  Def.'s Mem. at 29.

A showing of clear congressional intent is required to preclude judicial review of constitutional claims, "to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."  *Webster v. Doe*, 486 U.S. 592, 603 (1988) (citation omitted); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991).  Here, paragraph (3) precludes review of "[a]ny estimate" by the Secretary or "[a]ny period" selected by him for purposes of determining the factors in the UCC adjustment. So it is not clear from the statute's text that Congress also intended to preclude review of constitutional claims.  42 U.S.C. § 1395ww(r)(2), (3).  It is clear, however, that Count II fails to state a claim, so the Court will dismiss plaintiffs' constitutional claim pursuant to Rule 12(b)(6).[8]

---

7       The only reference to the separation-of-powers doctrine in plaintiffs' briefs is a footnote in their opposition brief.  *See* Pls.' Opp. at 18, n.9.

8       The analysis of whether a claim is "colorable" closely resembles a merits analysis in any event.

Count II as written was somewhat half-hearted, and plaintiffs seem to have thought better of their vague separation of powers claim since then.[9]  Now they maintain that they have a cause of action under the Due Process Clause, but the complaint is devoid of the factual allegations needed to support one.

To state a claim under the Due Process Clause, the first inquiry "is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'" *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). "Only after finding the deprivation of a protected interest do" courts consider whether the government's actions "comport with due process." *Gen. Elec. Co.*, 610 F.3d at 117.

D.C. Circuit precedent holds that a protected interest exists only when a "statute or regulation has placed substantive limits on official discretion" or when the regulations "contain explicitly mandatory language, i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Tarpeh-Doe v. United States*, 904 F.2d 719, 722–23 (D.C. Cir. 1990), quoting *Ky. Dep't. of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989) (emphasis omitted) (internal quotation marks omitted).

---

9      Count II alleges:

> The Secretary's action through the PRRB's denial of jurisdiction is invalid and should be set aside because it raises serious constitutional concerns. Congress may "make exceptions to the historic practice whereby courts review agency action" only "[s]ubject to constitutional constraints," and deprivation of all review raises "serious constitutional question[s]." "Separate-of-powers concerns" also "caution [courts] against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain."

Compl. ¶ 48 (citations omitted).

The complaint does not identify the property interest at stake, but it focuses generally on the data and period selected when calculating payments to the hospitals for uncompensated care. Paragraph (2)(C)(i) gives the Secretary broad discretion in determining a hospital's amount of uncompensated care, allowing him to estimate it based on "appropriate data" and to use "alternative data" as he determines would be a better proxy in making the estimate. *See* 42 U.S.C. § 1395ww(r)(2)(C)(i); *see also DCH Reg'l Med. Ctr. v. Price*, 257 F. Supp. 3d 91, 95 (D.D.C. 2017) (holding that the statute gives the Secretary "wide latitude to formulate the estimate figure" of uncompensated care); *DCH Reg'l*, 925 F.3d at 510 (referring to the requirement that defendant choose "appropriate data" in calculating the UCC adjustment as an "open-ended provision"). Thus, the statute has not placed "substantive limits on [the Secretary's] discretion" in calculating the UCC adjustment, *Tarpeh-Doe*, 904 F.2d at 722 (emphasis omitted), and plaintiffs do not allege a protected property interest in the right to have their DSH payments calculated in particular manner. *See also Painter v. Shalala*, 97 F.3d 1351, 1357–58 (10th Cir. 1996) (holding that a physician does not have a due process property interest in having his Medicare Part B payments calculated in a particular manner); *compare Am. Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 454–55 (7th Cir. 2002) (recognizing a "property interest in being reimbursed at the duly promulgated *reimbursement rate as set out in the [Medicare physician] fee schedule*") (emphasis added).

Given the insufficiency of the allegations concerning the deprivation of a liberty or property interest, the Court need not address the question of the nature of the process that would have been due, and Count II will be dismissed for failure to state a claim.

**CONCLUSION**

For the forgoing reasons, the Court will GRANT summary judgment to defendant on Count I and DISMISS Count II for failure to state a claim.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 7, 2021